UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Collette Stark,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>Bridgepoint Benefits, LLC,<br><br>　　　　　　　　　　Defendant. | Case No.: 3:19-cv-01740-AJB-AGS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>**(Doc. No. 7)** |

Before the Court is Collette Stark's ("Plaintiff") motion for default judgment. (Doc. No. 7.) Defendant Bridgepoint Benefits, LLC ("Defendant") did not file an opposition. Based on the reasoning below, the Court **GRANTS** Plaintiff's motion for default judgment. (*Id.*)

**I.    BACKGROUND**

Plaintiff brings an action against Defendant alleging violation of the Telephone Consumer Protection Act ("TCPA"). (Complaint ("COmpl.", Doc. No. 1.) Plaintiff alleges Defendant called and texted Plaintiff using an automatic telephone dialing system ("ATDS") without her consent. (*Id.* ¶ 1.) The allegations state that on September 4 and 10, 2019, Shawne Malone, sole owner of Defendant corporation, placed autodialed and prerecorded calls to Plaintiff's cellphone, advertising student loan forgiveness, reduction or elimination. (*Id.* ¶ 2.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case. It is within the sound discretion of the district court to grant or deny an application for default judgment. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the Court considers the following factors, commonly referred to as the *Eitel* factors: (1) "the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Generally, once the court clerk enters default, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). However, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992), superseded by statute on other grounds, Pub. L. No. 100-702, 102 Stat. 4669.

## III. DISCUSSION

### A. Procedural Requirements

Plaintiff has satisfied the procedural requirements for default judgment pursuant to Rules 55 and 54(c) of the Federal Rules of Civil Procedure. Pursuant to Rule 55(a), the Clerk of Court properly entered default against Defendant. (Doc. No. 5.) The Registered Agent of Defendant was personally served with the Summons and Complaint, and Defendant failed to plead or otherwise defend this action. (Doc. No. 3.) Defendant is not a minor, an incompetent person, nor is it subject to the Soldiers and Sailors Civil Relief Act of 1940. Furthermore, Defendant was also served with a copy of the request for default and the present motion. (Doc. No. 7.)

Thus, the Court, in its discretion, may order default judgment against Defendant. But, before entering default judgment, the Court reviews personal matter jurisdiction, as well as the factors enumerated in *Eitel*.

### B. Jurisdiction and Standing

#### 1. Personal Jurisdiction

Plaintiff alleges specific personal jurisdiction over Defendant. The Ninth Circuit employs a three-part test to determine whether the defendant's contacts with the forum state are sufficient to subject it to specific jurisdiction. *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Under the three-part inquiry, specific jurisdiction exists only if: (1) the out-of-state defendant purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws; (2) the cause of action arose out of the defendant's forum-related activities and (3) the exercise of jurisdiction is reasonable. *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001). The plaintiff bears the burden of satisfying the first two prongs of this specific jurisdiction test. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

However, Defendant is not an out-of-state defendant, as it is a resident and citizen of California, and alleged to be headquartered in Huntington Beach, California. (Compl. ¶ 11.) A defendant who is domiciled in a state, or alternatively has contacts with a state that are "substantial" or "continuous and systematic" can be haled into court in that state in any action, even if the action is unrelated to those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Thus, Plaintiff has shown that Defendant, a resident of California, purposely availed itself of the privilege of conducting activities in the forum when it placed telephone calls to Plaintiff whose telephone and residence were in the Southern District of California. This Court, therefore, has personal jurisdiction over Defendant.

### 2. Standing

Plaintiff bears the burden of establishing that she has standing to bring the claims at issue. To demonstrate standing, plaintiff must show that she has suffered an injury in fact, fairly traceable to the challenged conduct of the defendant, and that this injury in fact is likely to be redressed by a favorable judicial decision. *See Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). To establish injury in fact, plaintiff must show that she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* A plaintiff does not automatically satisfy the injury in fact requirement whenever a statute grants a statutory right and purports to authorize that person to sue to vindicate that right. *Id.* at 1549. Article III standing requires a concrete injury even in the context of a statutory violation. *Id.*

In this case, Plaintiff alleges she was called on her cellular telephone at least twice by Defendant. (Complaint ¶ 9.) Plaintiff says she "expressly informed Defendant to cease and desist from all future telemarketing on the first call." (*Id.* ¶ 29.) Plaintiff alleges that her "personal privacy and peace was invaded by Defendant's persistent phone calls using an ATDS and a pre-recorded message. . . ." (*Id.*) Finally, Plaintiff claims she has registered her telephone on the Do Not Call list specifically because she does not wish to receive these telephone calls. (*Id.* ¶ 41.) This is sufficient injury in fact, fairly traceable to the challenged conduct of the defendant, to satisfy standing under *Spokeo*. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients."). Furthermore, this injury is likely to be redressed by a favorable judicial decision. Therefore, Plaintiff has standing to bring the claims.

## C. *Eitel* Factors

### 1. Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. *See PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172,

4

1177 (C.D. Cal. 2002). Plaintiff attempted to prevent telemarketing calls by putting her name on the Do Not Call list and by instructing Defendant not to call her number again, to no avail. If default judgment is not entered, Plaintiff will be without recourse to recover for the injury suffered by this violation.

### 2.    Substantive Merits and Sufficiency of the Complaint

Two of the *Eitel* factors are (1) the merits of the plaintiff's substantive claim, and (2) the sufficiency of the complaint. *See Eitel*, 782 F.2d at 1471–72. The Ninth Circuit has suggested that these two factors require that a plaintiff "state a claim on which the [plaintiff] may recover." *Kleopping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). Plaintiff asserts two claims for relief under the TCPA.

For the first claim for a violation of 47 U.S.C. § 227(b)(1)(A), a plaintiff must show that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). The plaintiff must be the "called party," which includes "a telephone service subscriber." *Drew v. Lexington Consumer Advocacy*, No. 16-cv-00200-LB, 2016 WL 9185292, at *6 (N.D. Cal. Aug. 11, 2016).

Although Plaintiff's pleading is not perfect, Plaintiff has sufficiently alleged a violation of the TCPA. She claims that Shawne Malone, an employee of Defendant, called her cellular telephone multiple times using a ATDS. (*See, e.g.*, Compl. ¶¶ 4, 6, 7.) She supports her claims that an ATDS was used by alleging additional claims that: (1) "[m]ost of these robocalls used a prerecorded or artificial voice, while the rest were marked by an unnatural click or pause at the beginning-signaling to Ms. Stark that the call was placed by an ATDS rather than manually dialed by a person." (*id.* ¶ 45); (2) the calls were impersonal advertisements, not addressing Plaintiff personally because Plaintiff has never had a student loan, (*id.* ¶ 13); and (3) Plaintiff has never heard of Defendant, has never visited any location operated by it, has never provided her cellular telephone number to it, has

never had a prior business relationship with it and has never purchased a product or service from it, (*id.* ¶ 34).

In the second claim for relief, Plaintiff alleges that she received telemarketing calls from Defendant, despite the fact that she had registered her telephone number with the Do Not Call database, in violation of 47 U.S.C. § 227(c). Section 227(c) directs the Federal Communications Commission to formulate regulations to protect telephone subscribers' privacy rights and to establish a national database of telephone subscribers who object to receiving telephone solicitations. *See Kazemi v. Payless Shoesource, Inc.*, No. C 09-5142 MHP, 2010 WL 963225, at *2 (N.D. Cal, Mar. 16, 2010); 47 U.S.C. § 227(c)(3). The regulations promulgated under § 227(c) prohibit telephone solicitation to any telephone number on the Do Not Call Registry. *Id.*; 47 C.F.R. § 64.1200(c). Section 227(c)(5) establishes a private right of action for a person who has received a telephone call in violation of these regulations. *Id.*

Here, Plaintiff alleges that Defendant called her multiple times on her Do Not Call registered cell phone. (Compl. ¶ 41.) Thus, Plaintiff alleges a cause of action under § 227(c).

### 3. Sum of Money at Stake

The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1175; *see also Eitel*, 782 F.2d at 1471–72. Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

While Plaintiff's Complaint states she is requesting $1,500 per TCPA violation, Plaintiff's motion for default judgment states that she is seeking $0 in monetary damages. In any event, even assuming Plaintiff committed a typographical error, the amount sought per violation in the Complaint appears to be no more than is allowed under the TCPA statute for willful violations. Thus, this factor supports granting default judgment.

### 4. Possibility of Dispute

The next *Eitel* factor considers the possibility that material facts are disputed. *See PepsiCo*, 238 F. Supp. 2d at 1471–72. Generally, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in the complaint as true and (2) Defendant has not made any effort to challenge the complaint or otherwise appear in this case. *See Pepsico, Inc.*, 238 F. Supp. 2d at 1177. Therefore, this factor weighs in favor of granting default judgment.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers whether a defendant's default may have resulted from excusable neglect. *PepsiCo*, 238 F. Supp. 2d at 1177; *see also Eitel*, 782 F.2d at 1471–72. Here, it appears Defendant was properly served with the Complaint. (Doc. No. 3.) Defendant was also served with both the Request for Entry of Default and the Motion for Default Judgment. (Doc. Nos. 4, 7.) Defendant has not responded. Thus, it is unclear at this point whether Defendant's failure to respond was the result of excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 996, 1005 (N.D. Cal. 2001). Accordingly, this factor weighs in favor of the entry of default judgment.

### 6. Policy Favoring Decision on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The mere enactment of Rule 55(b) indicates, however, that "this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (quoting *Kloepping*, 1996 WL 75314, at *3 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible.")). Since Defendant failed to plead or otherwise defend, the seventh *Eitel* factor does not preclude the entry of default judgment.

\* \* \*

On balance, most of the *Eitel* factors weigh in favor of the entry of default judgment on the TCPA claims. Consequently, the Court finds it appropriate to grant Plaintiff's motion for default judgment against Defendant.

### D.     Damages

Under Rule 8(a)(3), a plaintiff's demand for relief must be specific, and plaintiff "must 'prove up' the amount of damages." *Philip Morris USA Inc. v. Banh*, No. CV 03-4043 GAF (PJWx), 2005 WL 5758392, at *6 (C.D. Cal. Jan. 14, 2005); *Elektra Entmn't Grp., Inc. v. Bryant*, No. CV 03-6381 GAF (JTLX), 2004 WL 783123, at *5 (C.D. Cal. Feb. 13, 2004) ("Plaintiffs must 'prove up' the amount of damages that they are claiming."). Rule 54(c) limits the relief that can be sought in a motion for entry of default judgment to that identified in the complaint. Fed. R. Civ. Proc. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *see also PepsiCo*, 238 F. Supp. 2d at 1174 (default judgment "shall not be different in kind from or exceed in amount that prayed for in the [complaint]'"). Also, a defaulting defendant is not deemed to have admitted facts concerning damages alleged in the complaint. *See id.* at 1177 ("Upon entry of default, all well pleaded facts in the complaint are taken as true, except those relating to damages" (citing *TeleVideo Sys.*, 826 F.2d at 917–18)).

Plaintiff has not made it clear how much she is requesting in her motion for default judgment. While her Complaint states generally she seeks $1,500 for each violation, she does not provide an amount she is seeking. Her motion does not clarify this matter as she states she is requesting $0 in damages. As such, while the Court grants Plaintiff's motion for default judgment, Plaintiff is **ORDERED** to file supplemental briefing detailing the exact amount she seeks in default judgment.

### IV.    CONCLUSION

For the above-stated reasons, Plaintiff's motion for default judgment is **GRANTED**, with the judgment amount to be determined pending Plaintiff's supplemental briefing. (Doc. No. 7.) Plaintiff is **ORDERED** to file supplemental briefing addressing the specific

//
//
//

8

amount she seeks as default judgment by **February 8, 2021**. Failure to timely file supplemental briefing will result in the dismissal of Plaintiff's action.

     **IT IS SO ORDERED.**

Dated: January 25, 2021

                                        Hon. Anthony J. Battaglia
                                        United States District Judge